UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOHANNA PAZ, MIREYA JARAMILLO,                    :
JENNIFER ALVAREZ ARISTIZABAL,
and ALEJANDRO ARTEAGA,                            :
for themselves and on behalf of those similarly
situated,                                         :
                        Plaintiffs,                  09 Civ. 03977 (LAK) (GWG)
                                                  :
        -v.-                                       REPORT AND RECOMMENDATION
                                                  :
IGNACIO PIEDRA, LEONORA PIEDRA,
CHALEO CORP., 742 TERRACE CORP.,                  :
MOON BRIGHT CORP., and 862 9TH
AVENUE CORP.,                                     :

                        Defendants.               :

-----------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

        In this action, current and former employees of three restaurants allege that the

defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law

("NYLL").  The case was previously certified as a class action for the state law claims and as a

collective action for the FLSA claims.

        Plaintiffs have now moved for summary judgment on the issue of defendants' liability for

failing to pay minimum wage, overtime wages, and spread-of-hours compensation.  Individual

plaintiffs have also moved for summary judgment on certain defendants' liability for breach of

contract and retaliation.  Defendants have not opposed the motion.  Accordingly, none of the

facts are in dispute.

        For the reasons stated below, plaintiffs' motion should be granted in part and denied in

part.

I.      BACKGROUND

Defendants Ignacio Piedra and Leonora Piedra own, manage, and otherwise control three

restaurants in New York City: Strada 57, Ralph's Restaurant, and Terrazza Toscana.  See

Plaintiffs' Requests to Admit, dated Oct. 1, 2010 (annexed as Ex. 3 to Plaintiffs' Notice of

Motion for Summary Judgement, filed July 19, 2011 (Docket # 106) ("Pl. Notice")) ("RTA")[1]

¶¶ 2–15; Plaintiffs' Statement Pursuant to Local Rule 56.1, filed July 20, 2011 (Docket # 115)

("Rule 56.1 Statement")[2] ¶ 13.  Ignacio and Leonora Piedra have operated the restaurants

through four corporate entities, all of which are defendants: Chaleo Corp., 862 9th Avenue

Corp., Moon Bright Corp., and 742 Terrace Corp. (collectively, "Corporate Defendants").  RTA

¶¶ 3, 6, 9, 14.  Each Corporate Defendant has operated only one restaurant.  See id.  The three

restaurants employ identical employment policies and procedures.  Rule 56.1 Statement ¶ 15.

Ignacio and Leonora Piedra are married and together own 80% of the shares of 742

Terrace Corp. and 100% of the shares of the other three Corporate Defendants.  RTA ¶¶ 2, 5, 8,

11; Declaration of Leonora Piedra, filed Sept. 14, 2009 (Docket # 45) ("Leonora Decl.") ¶¶ 2, 5.

Hector Camilleri, the brother-in-law of Leonora and Ignacio Piedra, owns the remaining 20% of

the shares of 742 Terrace Corp.  RTA ¶ 12; Leonora Decl. ¶ 5.  Ignacio and Leonora Piedra

regard each other as partners in the operation of the restaurants.  Leonora Decl. ¶ 8.  Ignacio

---

[1] As a result of defendants' failure to respond to plaintiffs' requests for admissions, all matters contained therein have been deemed admitted pursuant to Federal Rule of Civil Procedure 36(a)(3).  See Endorsed Letter, filed Oct. 10, 2010 (Docket # 101).

[2] Similarly, because defendants failed to controvert plaintiffs' Rule 56.1 Statement of Material Facts, all facts asserted therein are deemed admitted pursuant to Local Civil Rule 56.1(c).  See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (citations omitted).

Piedra is responsible for the "front" of the restaurants (menus, customer relations, and

supervision of employees), while Leonora Piedra is responsible for the "back" of the restaurants

(accounts receivable and payable; ordering food, liquor, and supplies; and managing payroll).

Id.  The Piedras work at the restaurants seven days per week.  Id.

Plaintiffs bring this action against defendants on behalf of themselves and the following

class of persons:

> All persons employed by Defendants as non-exempt, hourly service workers,
> including those in a tipped position, employed by Defendants who were not paid
> the proper minimum wage, or the proper overtime, or were not paid for all the
> hours worked, or who were not paid spread-of-hours pay, or who were not
> compensated for cost, care and maintenance of uniforms, at any time between
> April 20, 2003 and the date of final judgment in this matter (the "class period"),
> but the Defendants and any person related by blood or marriage to any individual
> defendants will be excluded from the class.

Plaintiffs' Memorandum of Law in Support of Motion for Partial Summary Judgment on

Liability, filed July 20, 2011 (Docket # 123) ("Pl. Mem.") at 4.  On November 24, 2009, the

court ordered that this case may proceed as a class action as to the causes of action based on the

NYLL and designated plaintiffs as class representatives and plaintiffs' counsel as class counsel.

See Order, filed Nov. 24, 2009 (Docket # 50) ("Certification Order").[3]  The class consists of

approximately 200 members.  Rule 56.1 Statement ¶ 6.  The Court also ordered that this case

---

[3] Plaintiffs' brief characterizes the Certification Order as having "conditionally certified" the defined class under Fed. R. Civ. P. 23, and plaintiffs request that this Court issue a final certification order.  See Pl. Mem. at 1, 2, 4.  The Order, however, did not impose any conditions on the certification of the proposed class.  See Certification Order ("The requirements of . . . Rule 23 plainly are met here.").  Rather, it "granted in all respects" plaintiffs' motion for class certification, id., which unconditionally requested a certification of the class and a designation of plaintiffs as class representatives and of plaintiffs' counsel as class counsel, see id.; Notice of Motion, filed Aug. 28, 2009 (Docket # 36); Plaintiffs' Memorandum of Law in Support of Motion for Class Certification, Collective Action Notice, and to Amend the Complaint, filed Aug. 29, 2009 (Docket # 41) at 7–16.

may proceed as an opt-in collective action as to the causes of action based on the FLSA.  <u>See</u>
Certification Order.

 All plaintiffs and class members were employed by defendants at some point during the
class period, which extends from April 20, 2003, until the resolution of the instant action.  Rule
56.1 Statement ¶ 50.  During the class period, defendants did not compensate plaintiffs and the
class members for all hours worked.  RTA ¶¶ 24, 60.  Defendants paid certain plaintiffs and class
members a fixed sum per shift regardless of the hours they worked, Rule 56.1 Statement ¶ 34,
and failed to pay plaintiffs and the class members the statutory minimum wage for all hours
worked, RTA ¶ 45.  Defendants paid some plaintiffs and class members no wage at all.  <u>See</u> Rule
56.1 Statement ¶ 26; Affidavit of Walter Avila, filed July 20, 2011 (Docket # 120) ("Avila Aff.")
¶¶ 3–5; RTA ¶¶ 18–23.  Defendants did not compensate plaintiffs and the class members for
overtime hours worked, <u>see</u> Rule 56.1 Statement ¶ 2; time spent training, RTA ¶ 62; "off-the-
clock time" prior to and after the employees' shifts during which plaintiffs and the class
members were required to perform tasks for defendants, <u>id.</u>; uniform-related expenses, <u>id.</u> ¶ 54;
or work performed during plaintiffs' and the class members' breaks during work hours, <u>id.</u> ¶ 63.
Defendants also failed to provide plaintiffs and the class members with "spread-of-hours"
compensation for days in which they worked more than 10 hours.  <u>Id.</u> ¶ 47.  Defendants did not
post requisite notices at the workplace advising employees of their rights.  Rule 56.1 Statement ¶
55.

 Additionally, defendants retained a portion of the tips plaintiffs and the class members
earned.  RTA ¶¶ 36–39, 53, 61, 72, 78–79.  Defendants' practice was to deduct 5% of the tips
that customers paid to plaintiffs and the class members by credit or debit card.  Rule 56.1
Statement ¶¶ 12, 40.  American Express charged defendants a 3.5% fee and Visa and

MasterCard charged defendants a fee of less than 2% for their credit and debit card processing services. Id. ¶¶ 41–42. Defendants retained the difference between the 5% deduction they took and the fees charged by Visa, MasterCard, and American Express. See id. ¶¶ 12, 40–43.

Without plaintiffs' and the class members' consent, defendants also pooled, redistributed, or otherwise retained the remaining tips that plaintiffs and the class members had earned. Id. ¶¶ 44, 58–59; RTA ¶ 64. Also, defendants did not inform plaintiffs and the class members of the tipped minimum wage or that they intended to deduct a tip credit from the employees' wages. Rule 56.1 Statement ¶ 2.

In addition to the injuries common to all plaintiffs and class members, Ignacio Piedra made a criminal complaint against plaintiff Johanna Paz in retaliation for her participation in this lawsuit. Id. ¶ 70; RTA ¶ 97. In the complaint, Ignacio Piedra alleged that Paz had sexually assaulted Piedra's 14-year-old son. Rule 56.1 Statement ¶ 71. After conducting an investigation, the police officer assigned to the case informed Paz that she "did not have to worry" about the complaint, Affidavit of Plaintiff Jennifer Alvarez Aristizabal, filed July 20, 2011 (Docket # 120) ("Aristizabal Aff.") ¶ 27; Affidavit of Plaintiff Mireya Jaramillo, filed July 19, 2011 (Docket # 107) ¶ 25, and no further action has been taken, Rule 56.1 Statement ¶ 75. The complaint was "wholly meritless." RTA ¶ 97.

Prior to the beginning of Paz's employment with defendants, Ignacio Piedra had informed Paz that he would hire her as a bartender if she took a bartending course and that he would pay for the cost of the course. Rule 56.1 Statement ¶ 76. Paz thereafter enrolled in a bartending course. Id. After Paz requested that Piedra pay for the course, Piedra instructed Paz to pay for the course herself and informed her that he would reimburse her. Id. Paz paid the $650 tuition and completed the course. Id. Piedra thereafter hired Paz as a bartender, but

refused to reimburse her for the cost of the course.  Id.  No other defendant has reimbursed Paz for taking the course.  Id.

Defendants retaliated against plaintiff Jennifer Alvarez Aristizabal by terminating Aristizabal's employment as a result of her complaints to defendants about their failure to compensate her for the cost of her work uniform and about the uncompensated hours defendants required her to work prior to the beginning of her shift to set up the restaurants.  Id. ¶ 77–83; see also Aristizabal Aff. ¶ 23.

Plaintiffs have moved for summary judgment on the following issues: (1) defendants' liability to all plaintiffs and class members under the FLSA and the NYLL for defendants' failure to pay the minimum wage, overtime wages, and spread-of-hours compensation; (2) defendants' liability for retaliating against Aristizabal; (3) defendants' liability for retaliating against Paz; (4) Ignacio Piedra's liability to Paz for breach of contract; (5) plaintiffs' and class members' entitlement to compensatory damages, reasonable attorney's fees, costs, statutory damages and prejudgment interest; and (6) whether defendants are jointly and severally liable on each of the foregoing claims.  See Pl. Notice 2–3.  Plaintiffs have also requested that the Court issue an injunction prohibiting defendants from retaliating against plaintiffs and the class members and a "corrective notice to the class to explain the protection against retaliation and the right to participate in this lawsuit."  Id. at 3.  Finally, they ask the Court to "establish[] a fair and equitable procedure pursuant to which the Plaintiffs, Collective Plaintiffs and Class Members can present proof of their respective damages resulting from the liability of the Defendants so that appropriate money judgments can be entered."  Id.

II.     DISCUSSION

     A.     The Standard for Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure provides that a court shall grant

summary judgment when "the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine

issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In

determining whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is

to be believed" and the court must draw "all justifiable inferences" in favor of the nonmoving

party.  Id. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)); accord

Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) ("[A]ll reasonable inferences

must be drawn against the party whose motion is under consideration.").

     Once the moving party has shown that there is no genuine issue as to any material fact

and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward

with 'specific facts showing that there is a genuine issue for trial,'" Matsushita Elec. Indus. Co.

v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in

original), and "may not rely on conclusory allegations or unsubstantiated speculation," Scotto v.

Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (citing cases).  In other words, the nonmovant must

offer "concrete evidence from which a reasonable juror could return a verdict in his favor."

Anderson, 477 U.S. at 256.  Where "the nonmoving party bears the burden of proof at trial,

summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish

the existence of an element essential to its case."  Nebraska v. Wyoming, 507 U.S. 584, 590

(1993) (internal quotation marks and citation omitted).  Thus, "[a] defendant moving for

7

summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." Allen v. Cuomo, 100 F.3d 253, 258 (2d Cir. 1996) (citing Anderson, 477 U.S. at 247–48).

      B.      Status of Each Defendant as an "Employer"

          1.      FLSA Liability Standard

The FLSA imposes liability on the "employer" of any employee who is subjected to the employer's violations of the FLSA's minimum wage, overtime, and retaliation provisions. See 29 U.S.C. §§ 216(b), (e)(2). The FLSA's definition of "employer" applies to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." See 29 U.S.C. §§ 203(a), (d). The FLSA defines "employer" as an entity "acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).

The definition of "employ" under the FLSA "includes to suffer or permit to work." 29 U.S.C. § 203(g). An employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). An entity need not possess "formal control" over a worker to qualify as an employer; the entity may simply exercise "functional control" over the worker in question. Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003). Factors relevant to determining control over a worker's employment include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Herman, 172 F.3d at 139

(quoting Carter, 735 F.2d at 12).  "No one of the four factors standing alone is dispositive."  Id.

(citing Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988)).  The existence of all

four indicia of employment "can be sufficient to establish employer status."  Zheng, 355 F.3d at

69 (emphasis omitted).  However, employer status does not require the existence of all four, and

a court should consider "any other factors it deems relevant."[4]  Id. at 71–72.

A worker performing a single task may simultaneously do so on behalf of multiple "joint

employers."  29 C.F.R. § 791.2; Zheng, 355 F.3d at 66 (citing 29 C.F.R. § 791.2).  When two or

more entities operate as joint employers of a given worker, each employer is jointly and

severally liable to those affected employees for the FLSA violations of all other joint employers.

See Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 186 (S.D.N.Y. 2003)

("Both Duane Reade and the Hudson/Chelsea defendants were the 'employers' of the plaintiffs

under [the FLSA and the NYLL], [and are] jointly and severally obligated for underpayments of

minimum wage and overtime . . . .");  29 C.F.R. §§ 791.2(a)–(b).  A joint employment

---

[4] The Second Circuit in Zheng applied six additional factors, which overlap somewhat with the four Herman factors, that the court found pertinent to the question of whether a general contractor exhibited functional control over the employees of a subcontractor:

> (1) whether [the general contractor's] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractor] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the general contractor's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [general contractor] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [general contractor].

355 F.3d at 72; accord Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 142 (2d Cir. 2008) (recognizing "different sets of relevant factors based on the factual challenges posed by particular cases").

relationship does not exist if the alleged joint employers "are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee." Id. § 791.2(a). A joint employment relationship may exist, however, if the putative joint employers are not completely disassociated with respect to the employment of a particular worker. See id. §§ 791.2(a)–(b). Determining whether two entities jointly employ a particular worker involves the same application of the Herman/Zheng factors as is required to determine whether a single entity is the employer of a worker. See Severin v. Project OHR, Inc., 2011 WL 3902994, at *6–7 (S.D.N.Y. Sept. 2, 2011); Diaz v. Consortium for Worker Educ., Inc., 2010 WL 3910280, at * 2–4 (S.D.N.Y. Sept. 28, 2010).

                    2.       NYLL Liability Standards

        The NYLL's definition of employment is nearly identical to the FLSA's. Compare 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."), with N.Y. Lab. Law § 2(7) ("'Employed' includes permitted or suffered to work."); see also Garcia v. La Revise Assocs. LLC, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's 'employer' provisions are equally [as] broad [as the FLSA's].") (citing Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)). As a result, courts in this circuit "hold that the New York Labor Law embodies the same standards for joint employment as the FLSA." Chen v. St. Beat Sportswear, Inc., 364 F. Supp. 2d 269, 278 (E.D.N.Y. 2005) (citing cases); accord Spicer, 269 F.R.D. at 335 n.13 ("[C]ourts have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA.") (quoting Jiao v. Shi Ya Chen, 2007 WL 4944767, at *9 n.12 (S.D.N.Y. Mar. 30, 2007)); Ansoumana, 255 F. Supp. 2d at 189 ("Because New York Labor Law and the FLSA embody similar standards . . . I will consider the federal law in deciding whether defendants were joint employers.") (citing cases). Accordingly, this

10

Court's conclusions with respect to each defendant's status as an employer under the FLSA apply equally to the defendants' statuses as employers under the NYLL.

3.    <u>Status of Ignacio Piedra and Leonora Piedra as Employers</u>

Ignacio and Leonora Piedra have not controverted plaintiffs' assertion that they were employers of plaintiffs and the class members during the class period.  <u>See</u> Rule 56.1 Statement ¶ 50.  And the record amply supports this assertion.  Ignacio and Leonora Piedra jointly own 100% of the shares of 862 9th Avenue Corp., Moon Bright Corp., and Chaleo Corp., through which Ralph's Restaurant and Strada 57 are or were run.  Leonora Decl. ¶ 2.  Ignacio and Leonora Piedra jointly own 80% of the shares of 742 Terrace Corp., through which Terrazza Toscana is run.  <u>Id.</u> ¶ 5; RTA ¶¶ 11–14.  Together, the Piedras have "the ultimate power to make binding decisions for all the corporate entities."  Rule 56.1 Statement ¶ 17.

The Piedras divide the managerial responsibilities between themselves, but otherwise regard each other as partners in the operation of their restaurants.  Leonora Decl. ¶ 8; Rule 56.1 Statement ¶ 16.  Among other duties, Ignacio Piedra is principally responsible for supervising restaurant workers.  Leonora Decl. ¶ 8.  Leonora Piedra, however, also shares a supervisory role.  Rule 56.1 Statement ¶ 17.  The Piedras supervise the restaurants seven days per week.  <u>Id.</u> Leonora Piedra primarily handles payroll, accounting, and ordering food and alcohol for the restaurants.  Leonora Decl. ¶ 8.  Additionally, the Piedras together control compensation practices at their restaurants.  Rule 56.1 Statement ¶ 23.  Both Ignacio and Leonora Piedra have made hiring and firing decisions.  Deposition of Ignacio Piedra, dated Aug. 21, 2009 (annexed as Ex. 5 to Pl. Notice) ("Ignacio Dep.") at 25–26.  Ignacio and Leonora Piedra also determine employment policies and procedures at all of the restaurants.  <u>See</u> Rule 56.1 Statement ¶ 15.

11

Given these facts, both Ignacio and Leonora Piedra exercise both formal and functional control over plaintiffs and the class members, thereby rendering them employers under the FLSA and the NYLL.  They are the sole or controlling shareholders of all Corporate Defendants, enjoy equal managerial authority over the restaurants and their employees, and supervise employees seven days per week.  Moreover, the powers they exercise include all four <u>Herman</u> indicia of control: the Piedras hire and fire employees, supervise employees seven days per week, control compensation policies, and maintain employment documents.  <u>See Herman</u>, 172 F.3d at 139.  As employers of plaintiffs and the class members, they are jointly and severally liable for any FLSA or NYLL violation committed by each other or another joint employer.  <u>See Ansoumana</u>, 255 F. Supp. 2d at 186.

### 4.        Status of Corporate Defendants as Employers

Plaintiffs assert that the four Corporate Defendants jointly employed all plaintiffs and class members and therefore are jointly and severally liable for each other's FLSA and NYLL violations affecting plaintiffs and the class members.  <u>See</u> Pl. Notice at 3.  The Corporate Defendants are the entities through which the restaurants are or were owned and managed.  Each Corporate Defendant separately manages each restaurant.[5]  Plaintiffs' position is that, for example, Chaleo Corp. is liable for the FLSA and NYLL violations committed by Moon Bright Corp. even though the two corporations operate different restaurants, have different employees, and are distinct legal entities.

---

[5] Two Corporate Defendants, 862 9th Avenue Corp. and Moon Bright Corp., have at separate times operated Ralph's Restaurant.  <u>See</u> RTA ¶¶ 6, 9.

Plaintiffs' argument that each Corporate Defendant is an employer of all plaintiffs and all class members rests on the following facts: (1) four employees of Terazza Toscana either currently work or had previously worked at Strada 57 or Ralph's Restaurant,[6] see Pl. Mem. at 19–20; (2) Ignacio Piedra had "hired a man named Freddy to train both existing staff and others at Strada 57 to 'bring to' Terrazza Toscana," see id. at 20 (citation omitted); and (3) the Piedras occasionally used different Corporate Defendants' funds to pay the debts of the other Corporate Defendants, including the salary of at least one employee, and, on at least one occasion, the Piedras' personal debts, see id. at 20.

Obviously, a company is the employer of a person who performs work for that company, on that company's premises, under the supervision of that company's managers, and in exchange for compensation from that company. This describes the relationship of each Corporate Defendant to its own workers. But the relationship of each Corporate Defendant to the employees of other Corporate Defendants is quite different. With the exception of the four workers who have had employment relationships with multiple restaurants, there is no evidence that any one of the Corporate Defendants ever had any relationship whatsoever with another Corporate Defendant's employees.

Plaintiffs' effort to hold the Corporate Defendants liable as employers for the other Corporate Defendants' employees fails the "economic reality test" articulated in Herman and Zheng. Plaintiffs have provided no evidence (1) that one Corporate Defendant could fire or hire the employees of another; (2) that one Corporate Defendant supervised and controlled the work

---

[6] Marcelo Piedra, Ignacio Piedra's brother, currently works at both Terrazza Toscana and Strada 57. Ignacio Dep. at 191. Jose previously worked at Strada 57. Id. at 47. Kenny previously worked at Ralph's. Id. at 63–64. Tomas Bravo has worked at both Ralph's and Strada 57. Affidavit of Tomas Bravo, filed July 20, 2011 (Docket # 109) ("Bravo Aff.") ¶ 20.

schedules or work conditions of another's employees; (3) that one Corporate Defendant determined the compensation of another's employees; or (4) that one Corporate Defendant maintained personnel records of another's employees.  See Herman, 172 F.3d at 139.  With the exception of four workers employed by two separate Corporate Defendants, no employee of any restaurant has ever performed work on the premises of another restaurant or for another restaurant.  See Zheng, 355 F.3d at 72 (advising courts to consider whether a worker of one employer ever worked for the alleged joint employer or on the premises of the alleged joint employer).  As for the four individuals who have worked for multiple Corporate Defendants, unlike the situation that prevailed in cases such as Zheng and Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947), there is no evidence that the work they performed at one restaurant also benefitted a Corporate Defendant that did not own that restaurant.  See id.

Moreover, while it is true that restaurant employees were supervised by the Piedras and that the Piedras were agents of all three restaurants, this fact is insignificant under the present circumstances.  It would constitute a factor weighing in favor of finding each Corporate Defendant a joint employer of all employees if, like the supervising agents in Zheng and Rutherford, the Piedras supervised the employees of one restaurant while acting in the capacity of an agent for another restaurant.  See Rutherford, 331 U.S. at 730 (considering fact that manager of general contractor closely supervised work of subcontractor's employees a factor in favor of deeming the general contractor a joint employer of the subcontractor's employees); see Zheng, 355 F.3d at 70–71 (analogizing case to Rutherford).  However, unlike the supervising managers in Zheng and Rutherford, there is no indication that the Piedras supervised employees of a given restaurant in their capacities as agents of any other restaurant.

14

Accordingly, plaintiffs have failed to demonstrate that any one Corporate Defendant exercised either formal or functional control over the workers of any other.[7]  Therefore, each Corporate Defendant is liable only to the extent of the FLSA and NYLL violations that it committed.  The mere fact that each Corporate Defendant is owned in whole or major part by the same persons simply does not permit this Court to disregard their distinct legal statuses.  See generally Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc., 255 F. Supp. 2d 134, 179 (W.D.N.Y. 2003) (explaining the various prerequisites for holding one company responsible for the liabilities of an affiliated company with common ownership); cf. Zheng, 355 F.3d at 376 (a "mere business partner[] of [a worker's] direct employer" is not also that worker's employer).

    C.      Plaintiffs' Substantive Claims

        1.      FLSA Minimum Wage Claims

The FLSA provides that every employer not otherwise exempt from its coverage must pay any employee engaged in commerce a minimum hourly wage.  See 29 U.S.C. § 206(a)(1).  The defendants here were obligated to pay plaintiffs and the class members the applicable minimum wage.  Rule 56.1 Statement ¶¶ 49, 50.  During the class period, the standard federal minimum wage was between $5.15 per hour and $7.25 per hour.  See 29 U.S.C. § 206(a)(1) (providing rates from 2007 to present); 29 U.S.C.A. § 206, Historical and Statutory Notes (West 2011) (providing rates from 2003 to 2007).  The rates at which defendants compensated plaintiffs and the class members varied but were at times less than the minimum wage.  See RTA ¶ 45; Rule 56.1 Statement ¶ 2.  Defendants paid the waitstaff no wage at all.  See Avila Aff. ¶¶

---

[7] Some of plaintiffs' evidence might be probative of whether Corporate Defendants are alter egos of each other.  But plaintiffs have not made a claim or arguments on this basis.

3–5; RTA ¶¶ 18–21.  Other employees were paid a fixed sum per shift, regardless of the total

hours the employee actually worked.  Rule 56.1 Statement ¶ 34.  For at least some employees,

these fixed rates were $15 per lunch shift and $20 per dinner shift.  See Affidavit of Walter

Calle, filed July 20, 2011 (Docket # 114) ("Calle Aff.") ¶ 5; Bravo Aff. ¶ 5.  Most shifts

officially lasted 5 hours, see Calle Aff. ¶ 5; Bravo Aff. ¶ 5; Rule 56.1 Statement ¶ 11, but

defendants regularly required plaintiffs and class members to perform uncompensated work

outside of their regular shift.  Rule 56.1 Statement ¶ 3.

 If certain conditions are met, an employer may pay an employee an hourly wage less than

the standard minimum wage when the employee receives tips from customers for his services.

See 29 U.S.C. §§ 203(m), (t).  To be eligible to take this "tip credit" against the minimum wage,

an employer must, among other requirements, "notify employees of the law regarding minimum

wages and of the employer's intention to take the tip credit."  Nicholson v. Twelfth St. Corp.,

2010 WL 1780959, at *2 (S.D.N.Y. May 4, 2010) (citing Chan v. Sung Yue Tung Corp., 2007

WL 313483, at *14 (S.D.N.Y. Feb. 1, 2007); Chung v. New Silver Palace Rest., 246 F. Supp. 2d

220, 228–29 (S.D.N.Y. 2003)).  Defendants failed to inform plaintiffs and the class members of

the minimum wage laws and of their intention to take tip a credit.  See Rule 56.1 Statement ¶ 2.

Therefore, defendants were not eligible to avail themselves of the tip credit.  Accordingly,

defendants are liable to those plaintiffs and class members who were not paid the standard

minimum wage, as provided in 29 U.S.C. § 206(a)(1), for all hours worked.


 2.  NYLL Minimum Wage Claims

NYLL § 652 provides the base minimum wage rates that applied to all employees in New

16

York State during the class period.[8]  As under federal law, when employees receive tips from customers, an employer may take a "tip credit" up to a maximum amount and pay employees at a reduced minimum wage rate if, among other prerequisites, the employer has notified the employee of its intention to take the tip credit.  See N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3 (2011) ("An employer may take a credit towards the basic minimum hourly rate if . . . the employee has been notified of the tip credit . . . .").  Because defendants failed to inform plaintiffs and the class members of their intention to take a tip credit, see Rule 56.1 Statement ¶ 2, defendants were ineligible to avail themselves of the NYLL's tip credit provisions. Defendants did not always pay plaintiffs and the class members a wage at least equal to the NYLL's standard minimum hourly rate.  Id.  Therefore, defendants are liable to plaintiffs and the class members for back-pay to the extent that defendants failed to pay the employees at least the standard minimum hourly rate.

### 3.   FLSA and NYLL Overtime Claims

Both the FLSA and the NYLL require that employees receive a wage at least equal to 150% of their regular rate of pay for those hours worked in excess of 40 hours per workweek. See 29 U.S.C. § 207(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4 (2011).  Plaintiffs and the class members worked more than 40 hours during some weeks of their employment, and defendants failed to pay them at least equal to 150% of the base minimum wage for those hours worked in excess of 40.  See Rule 56.1 Statement ¶¶ 28, 30; RTA ¶ 28.  Therefore, defendants

---

[8] During the class period, the standard minimum wage rate in New York was at different times between $5.15 per hour and $7.25 per hour.  N.Y. Lab. Law § 652 (incorporating in part 29 U.S.C. § 206).

are liable under both federal and New York State law to plaintiffs and the class members for back-pay to the extent that defendants failed to pay the employees the proper overtime rate.

4.     <u>Spread of Hours Pay Claims</u>

Under the NYLL, an employee must "receive one additional hour of pay at the basic minimum hourly wage rate" for each workday in which the "spread of hours" of the employee's workday exceeds ten hours.  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6 (2011).  New York defines "spread of hours" as "the length of the interval between the beginning and end of an employee's workday," which "includes working time plus time off for meals plus intervals off duty."  <u>Id.</u>  Employees are owed an additional hour of compensation at the base minimum wage, as defined in N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2 (2011), not the lower minimum wage rate for tipped employees whose employers are eligible for a tip credit.  <u>Ke v. Saigon Grill, Inc.</u>, 595 F. Supp. 2d 240, 260 (S.D.N.Y. 2008) (citing N.Y. Comp. Codes R. & Regs. tit. 12, § 137-1.7 (repealed Jan. 1, 2011)).  Here, defendants did not provide plaintiffs and the class members with this "spread of hours" compensation when an employee's workday exceeded ten hours.  Rule 56.1 Statement ¶ 2; RTA ¶ 47.  Therefore, defendants are liable to plaintiffs and the class members for an additional hour of compensation for each day that plaintiffs and the class members worked a workday with a spread of hours in excess of ten hours.

5.     <u>Jennifer Alvarez Aristizabal's Retaliation Claims</u>

The NYLL protects employees who exercise certain rights accorded by law from retaliatory acts by an employer.  Among other protections, the NYLL provides that neither an employer nor its agent may "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in

18

good faith, believes violates any provision of this chapter . . . ."  N.Y. Lab. Law § 215(1)(a)(i).
A plaintiff establishes a prima facie claim if she demonstrates that "while employed by the
defendant, she made a complaint about the employer's violation of the law and, as a result, was
terminated or otherwise penalized, discriminated against, or subjected to an adverse employment
action."  Higueros v. N.Y. State Catholic Health Plan, Inc., 630 F. Supp. 2d 265, 269 (E.D.N.Y.
2009) (citing Lu v. Jing Fong Rest., Inc., 503 F. Supp. 2d 706, 712 (S.D.N.Y. 2007); Kreinik v.
Showbran Photo, Inc., 2003 WL 22339268, at *8 (S.D.N.Y. Oct. 10, 2003)).  Upon such a
showing, "the burden of production shifts to the employer to demonstrate that a legitimate,
nondiscriminatory reason existed for its action."  Id. at 271 (quoting Raniola v. Bratton, 243 F.3d
610, 625 (2d Cir. 2001)).  The plaintiff may then rebut that demonstration by proving that the
employer's proffered explanations are merely pretextual.  Id. at 272.

Defendants required Jennifer Alvarez Aristizabal to arrive one hour prior to the start of
her shift to set up the bar and restaurant but did not pay her for this time.  Aristizabal Aff. ¶ 21;
RTA ¶ 82.  Defendants also did not compensate Aristizabal for uniform-related expenses.
Aristizabal Aff. ¶ 19; RTA ¶ 87; Rule 56.1 Statement ¶ 90.  Aristizabal complained to
defendants about their failure to compensate her for all of her hours worked and her uniform
expenditures.  Aristizabal Aff. ¶¶ 22–23; RTA ¶ 89; Rule 56.1 Statement ¶ 83.  In retaliation for
her complaints, Aristizabal was terminated from employment with Ralph's Restaurant by the
Piedras and the Corporate Defendant then operating Ralph's Restaurant.[9]  Aristizabal Aff.
¶¶ 22–23; RTA ¶ 89; Rule 56.1 Statement ¶ 83.  Because defendants' desire to retaliate against
Aristizabal for her wage and hour complaints motivated their decision to terminate her,

_____

[9] It is unclear from the record whether Moon Bright Corp. or 862 9th Avenue Corp.
operated Ralph's Restaurant at the time of Aristizabal's firing.

Aristizabal is entitled to summary judgment on the issue of her employers' liability for violating NYLL § 215.

### 6.   Johanna Paz's Retaliation Claims

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against . . . any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Similarly, the NYLL protects an employee from being "discharge[d], threaten[ed], penalize[d], or in any other manner discriminate[d] or retaliate[d] against" by reason of that employee's having "made a complaint . . . to any other person that the employer has violated any provision of this chapter" or on the ground that "such employee has caused to be instituted . . . a proceeding under or related to this chapter." N.Y. Lab. Law §§ 215(1)(a)(i)–(iii). These provisions of the FLSA and the NYLL prohibit an employer from retaliating against an employee for having organized a lawsuit against the employer for violations of federal or state labor laws. See Ke, 595 F. Supp. 2d at 263.

Here, shortly after Johanna Paz filed this law suit, Ignacio Piedra filed a wholly meritless criminal complaint against Paz in retaliation for her instituting this action. See RTA ¶¶ 95–98. Because defendants have not claimed otherwise, we will assume that the filing of this criminal complaint constitutes a violation of 29 U.S.C. § 215(a)(3) and NYLL §§ 215(1)(a)(i)–(iii). Paz has not provided any evidence as to the involvement of Leonora Piedra or any other defendant in the filing of the criminal complaint. Accordingly, on the current record, only Ignacio Piedra is liable for this violation.

### 7.   Johanna Paz's Breach of Contract Claim

Ignacio Piedra offered to reimburse Johanna Paz for the cost of tuition at bartending

school if she completed a bartending course.  See Rule 56.1 Statement ¶ 76.  Paz completed the

course and Piedra never paid her.  The elements of a cause of action to recover damages for

breach of contract under New York law are "(1) the existence of a contract, (2) the plaintiff's

performance under the contract, (3) the defendant's breach of the contract, and (4) resulting

damages."  Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 806 (2d

Dep't  2011) (citations omitted). "The formation of a valid, express contract under New York

law requires an offer, acceptance, consideration, mutual assent, and intent to be bound."  Int'l

Bus. Machs. Corp. v. Johnson, 629 F. Supp. 2d 321, 330 (S.D.N.Y. 2009) (citing Register.com,

Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004); Maffea v. Ippolito, 247 A.D.2d 366 (2d

Dep't 1998)).  All these elements are present in this case or their existence may reasonably be

inferred from the facts.  Accordingly, Ignacio Piedra is liable for breach of contract.

      D.     <u>Remedies</u>

Plaintiffs have moved for summary judgment with respect to certain aspects of damages

and injunctive relief, which are discussed below.

      1.     <u>Defendants' Violations of the Minimum Wage, Overtime, and Spread-of-Hours Laws</u>

NYLL § 198(1-a) allows a plaintiff who prevails on a claim of unpaid wages to recover

"the full amount of any underpayment [and] all reasonable attorney's fees."  N.Y. Lab. Law §

198(1-a) (2011).  Defendants are, therefore, liable to plaintiffs and the class members for back-

pay to the extent of the unpaid overtime, minimum wage, and spread-of-hours compensation to

which each plaintiff and class member is owed.  Plaintiffs are also entitled to their attorney's

fees.

      2.     <u>Liquidated Damages Under the FLSA</u>

Plaintiffs have requested liquidated damages in the amount of 100% of unpaid overtime compensation and minimum wages pursuant to 29 U.S.C. § 216(b).  See Pl. Mem. at 21–22.  An employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions . . . of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").  However, the employer may escape liability for such liquidated damages if the employer demonstrates that his violation of the FLSA was committed "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA.  29 U.S.C. § 260; see also Brock v. Wilamowsky, 833 F.2d 11, 19 (2d Cir. 1987) ("Under [FLSA] § 260, the employer bears the burden of establishing the defense of good faith.").

Although defendants initially raised their good faith as an affirmative defense in their answer, see Answer to Complaint, filed June 1, 2009 (Docket # 10) ¶ 69, defendants on this summary judgment motion have not provided any evidence to show they acted in good faith.  Accordingly, defendants have failed to carry their burden on this defense and are liable to plaintiffs and the class members for liquidated damages under the FLSA in an amount equal to 100% of the unpaid overtime and minimum wages to which each plaintiff and class member is owed.

3.     Liquidated Damages Under the NYLL

In addition to FLSA liquidated damages, plaintiffs and the class members have requested

liquidated damages under the NYLL in an amount equal to 25% of unpaid minimum wages, overtime, and spread-of-hours compensation.[10]   District courts have disagreed on the question of whether a plaintiff may recover liquidated damages under both the FLSA and the NYLL for the same violations.  Compare Alejo v. Darna Rest., 2010 WL 5249383, at *5 (S.D.N.Y. Dec. 17, 2010), modified on other grounds, 2011 WL 165413 (S.D.N.Y. Jan. 18, 2011) (awarding liquidated damages only under the statute that offered greater recovery when the FLSA and the NYLL overlapped), Chan v. Sung Yue Tung Corp., 2007 WL 313483, at *28–29 (S.D.N.Y. Feb. 1, 2007) (same), Jin v. Pac. Buffet House, Inc., 2009 WL 2601995, at *9 (E.D.N.Y. Aug. 24, 2009) (same), and Yin v. Kim, 2008 WL 906736, at *1, 7 (E.D.N.Y. Apr. 1, 2008) (same), with Wicaksono v. XYZ 48 Corp., 2011 WL 2022644, at *7 (S.D.N.Y. May 2, 2011) (awarding liquidated damages for same violations under both the NYLL and the FLSA), and Dong v. CCW Fashion, Inc., 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009) ("In addition to actual damages, plaintiffs may recover liquidated damages under the FLSA and New York State law for the same minimum wage and overtime violations.").

---

[10] Although plaintiffs request 25% of unpaid wages as liquidated damages, the current version of NYLL § 198(1-a), effective April 11, 2011, allows an employee to recover 100% of unpaid wages as liquidated damages.  See N.Y. Lab. Law § 198(1-a) (2011).  Plaintiffs' request for liquidated damages in the amount of 25% of unpaid wages presumably is based on the prior version of the statute, which had capped liquidated damages at 25%.  See 2010 N.Y. Sess. Laws c. 564, § 7 (McKinney).  Plaintiffs also assume that the NYLL requires, as a prerequisite to eligibility for liquidated damages, that an employee show that the employer's violation of the NYLL was "willful."  Pl. Mem. at 23.  But the New York Legislature amended NYLL § 198(1-a) in 2009 to eliminate the requirement of showing wilfulness and instead make liquidated damages presumptively available, unless the employer affirmatively proves that it acted in good faith.  See 2009 N.Y. Sess. Laws c. 372, § 1 (McKinney); N.Y. Lab. Law § 198(1-a).  At least one case has held that these amendments do not have retroactive effect, see Wicaksono, 2011 WL 2022644, at *6 n.2, and thus would only apply to a portion of the wage claims in this case.  Because the plaintiffs have not briefed the applicability of the amendments or sought to apply them to their claims, we do not consider them further.

This Court concludes that an employee is not entitled to recover liquidated damages under both statutes. Liquidated damages under both statutes "compensate[] the exact same harm – namely, the harm caused by the defendant's culpable state of mind." Yin, 2008 WL 906736, at *7. Moreover, "[r]egardless of the purpose, the award under the FLSA is four times the award under state law, and thus is more than sufficient to satisfy any punitive purpose the state law is intended to serve." Jin, 2009 WL 2601995, at *9. Therefore, plaintiffs and the class members may not recover liquidated damages under the NYLL for violations committed by defendants for which they also received FLSA liquidated damages. Accordingly, they may not recover liquidated damages on their minimum wage and overtime claims.

However, plaintiffs and the class members may still recover NYLL liquidated damages for their spread-of-hours claims, which are brought exclusively under the NYLL. Under the prior version of NYLL § 198(1-a), plaintiffs and the class members may recover liquidated damages to the extent they have demonstrated that defendants willfully failed to pay spread-of-hours compensation. See N.Y. Lab. Law § 198(1-a) (2009). Defendants have not controverted plaintiffs' allegation that they acted wilfully in this regard, see Rule 56.1 Statement ¶ 60, and thus plaintiffs are entitled to 25% liquidated damages under the prior version of the statute for any spread-of-hours violations.

### 4.   Jennifer Alvarez Aristizabal's Retaliation Claim

Jennifer Alvarez Aristizabal worked at Ralph's Restaurant from February 2008 until her termination in September 2008. Aristizabal Aff. ¶ 2. 862 9th Avenue Corp. operates Ralph's Restaurant; Moon Bright Corp. used to operate Ralph's. RTA ¶¶ 6, 9. It is unclear which Corporate Defendant operated Ralph's at the time of Aristizabal's termination in 2008. Accordingly, no Corporate Defendant may be deemed responsible for the termination on this

record.  However, as discussed in Part II.B.3 above, Ignacio and Leonora Piedra jointly

employed Aristizabal.

During her employment at Ralph's, Aristizabal complained to the Piedras about actions

by the Piedras that she reasonably believed violated federal and New York State labor laws.  On

September 7, 2008, in retaliation for her complaints, Aristizabal was terminated in violation of

NYLL § 215.  RTA ¶ 83.  Ignacio Piedra and Leonora Piedra are therefore jointly and severally

liable to Aristizabal for compensatory damages, reasonable attorney's fees, and costs.  See N.Y.

Lab. Law § 215(2)(a).  Aristizabal is also entitled to liquidated damages up to $10,000.  See id.

> 5.      Johanna Paz's Retaliation Claim

 In retaliation for Paz's instituting the instant action in April 2009, Ignacio Piedra filed a

"wholly meritless" criminal complaint against Paz, thereby violating both 29 U.S.C. § 215(a)(3)

and NYLL § 215(1)(a).  See Rule 56.1 Statement ¶ 70; RTA ¶ 97.  Pursuant to NYLL

§ 215(2)(a), Paz is entitled to liquidated damages of up to $10,000, compensatory damages,

reasonable attorney's fees, and costs from Ignacio Piedra.[11]

> 6.      Johanna Paz's Breach of Contract Claim

As discussed in Part II.C.7 above, Ignacio Piedra breached a contractual agreement with

Paz to pay her $650 as reimbursement for Paz's tuition for a bartending course.  Section 5001 of

New York's Civil Practice Laws and Rules ("CPLR") makes prejudgment interest available to a

plaintiff prevailing on a breach of contract claim.  See NML Cap. v. Republic of Argentina, 17

N.Y.3d 250, 258 (2011) ("CPLR 5001 permits a party that prevailed in a breach of contract

---

[11] Paz mentions in passing that she also seeks "punitive damages," see Pl. Mem. at 28, but does not brief the question of whether such damages are authorized under the FLSA. Accordingly, we do not construe her motion as seeking summary judgment on this issue.

action to obtain prejudgment interest . . . .").  The annual prejudgment interest rate is 9 percent.
Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 90–91 (2d Cir. 1998) (citing CPLR § 5004).  Ignacio
Piedra is accordingly liable to Paz in the amount of $650 plus prejudgment interest calculated at
a rate of 9 percent annually from the date of the breach.   Because Paz has not provided evidence
of the date of the breach, no award for prejudgment interest can be made at this time.

### 7.      Prejudgment Interest on Unpaid Wages Claims

Federal law prohibits a plaintiff from recovering prejudgment interest for FLSA
violations for which the plaintiff also received liquidated damages.  See Brock v. Superior Care,
Inc., 840 F.2d 1054, 1065 (2d Cir. 1988) ("It is well settled that in an action for violations of the
Fair Labor Standards Act prejudgment interest may not be awarded in addition to liquidated
damages.").  This is because an award of liquidated damages under the FLSA serves, among
other purposes, to "compensate [the plaintiff] for the delay in receiving wages that should have
been paid."  Id.  Plaintiffs and the class members may not, therefore, recover prejudgment
interest on their minimum wage or overtime claims.  However, because the Court is awarding
liquidated damages on the plaintiffs and class members' spread-of-hours claims only under the
NYLL, they may recover prejudgment interest for those claims.  See Wicaksono, 2011 WL
2022644, at *8 (awarding prejudgment interest and NYLL liquidated damages on spread-of-
hours claims); Lin v. Hayashi Ya II, Inc., 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009)
(same); Ke, 595 F. Supp. 2d at 262 ("[A] plaintiff awarded [NYLL liquidated damages] . . . may
also recover pre-judgment interest . . . .").

### 8.      Equitable Remedies for Retaliation Claims

Plaintiffs have requested that this Court enjoin defendants from further retaliating against
plaintiffs and the class members for their participation in this suit and that this Court issue "a

corrective notice to the class to explain the protection against retaliation and the right to participate in this lawsuit."  Pl. Notice at 3.  Because both requests would "be appropriate to effectuate the purposes of section 215(a)(3) of [the FLSA]," both should be granted.  See 29 U.S.C. § 216(b).

       E.       <u>Procedure for Adjudicating Damages Claims</u>

Plaintiffs have requested that this Court "establish[] a fair and equitable procedure pursuant to which the Plaintiffs, the Collective Plaintiffs and Class Members can present proof of their respective damages resulting from the liability of the Defendants."  Pl. Notice at 3. Plaintiffs' brief, Pl. Mem. at 29, cites to no statute or case law that would permit defendants' liability for damages to be adjudicated by means other than a trial or further motion for summary judgment that provides specific evidence on damages – absent defendants' consent. Accordingly, to the extent plaintiffs are proposing some other procedure for obtaining a judgment for damages against the defendants, such a request must be denied.

III.     <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' motion for summary judgment (Docket # 106) should be granted in part and denied in part.  Specifically, partial summary judgment should be granted on the following issues:

       (1)     liability of all defendants for violating the FLSA's and the NYLL's minimum wage provisions, the FLSA's and the NYLL's overtime-pay provisions, and the NYLL's spread-of-hours provisions;

       (2)     (a) plaintiffs and the class members' entitlement to attorney's fees, unpaid wages, overtime pay, and spread-of-hours compensation that they are owed, plus (b) liquidated damages equal to 100% of the unpaid wages and overtime

27

compensation that they are owed, plus (c) prejudgment interest and 25% liquidated damages for any spread-of-hours compensation they are owed;

(3)    liability of Leonora Piedra, Ignacio Piedra, and the Corporate Defendant through which Ralph's Restaurant was run at the time of the violation for terminating Jennifer Alvarez Aristizabal in violation of NYLL § 215(1)(a)(i);

(4)    Aristizabal's entitlement to compensatory damages, attorney's fees, and costs resulting from Aristizabal's illegal termination, plus liquidated damages up to $10,000;

(5)    liability of Ignacio Piedra for retaliating against Paz by filing a false criminal complaint, in violation of NYLL § 215 and 29 U.S.C. § 215(a)(3);

(6)    Paz's entitlement to compensatory damages, attorney's fees, and costs resulting from Ignacio Piedra's retaliation against Paz, and liquidated damages up to $10,000;

(7)    liability of Ignacio Piedra for breach of contract, and Paz's entitlement to damages in the amount of $650 plus prejudgment interest;

(8)    plaintiffs and the class members' entitlement to an order enjoining defendants from committing further retaliatory acts directed towards plaintiffs and the class members; and

(9)    plaintiffs and the class members' entitlement to an order requiring that a corrective notice be issued to the class members to explain the protections against retaliation and the right to participate in this lawsuit.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties have fourteen (14) days including weekends and holidays from service of

this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a),

(b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the

Court, with copies sent to the Hon. Lewis A. Kaplan, and to the undersigned, at 500 Pearl Street,

New York, New York 10007. Any request for an extension of time to file objections must be

directed to Judge Kaplan. If a party fails to file timely objections, that party will not be

permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v.

Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham,

Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: January 11, 2012
     New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

29